IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MARK BELTON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 03-0964-CV-W-HFS |
| | ) | |
| PREMIUM MORTGAGE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the court is the motion of defendants Premium Mortgage, Inc., and William Mohn for summary judgment. Plaintiffs, Mark Belton, and Terence Cooper, as former employees of defendants, commenced this action pursuant to section 16(b) of the Fair Labor Standards Act ("FLSA") of 1938, 29 U.S.C. § 216(b). In their complaint, plaintiffs seek recovery of unpaid overtime compensation, unpaid minimum wage compensation, liquidated damages, attorney fees, and costs.

In their motion for summary judgment, defendants claim that because plaintiffs qualify as exempt employees under the "outside salesmen" exemption of 29 U.S.C. § 213(a)(1), they are not entitled to overtime wages under 29 U.S.C. §§ 206(a) and 207(a).

Also, before the court is defendants' fourth motion for sanctions. Defendants seek the imposition of sanctions and claim that counsel for plaintiffs failed to respond to discovery requests, file witness and exhibit lists, or to participate in preparing a joint proposed pre-trial order.

Background Facts

The parties essentially agree on most of the facts surrounding this dispute, and where controverted, will be duly noted. Plaintiffs began their employment with defendants in June of 2002, and were trained as loan originators during the first 2 weeks of employment. According to defendants, as loan originators, plaintiffs were trained as salespeople in order to learn the mortgage business and to increase their individual sales efforts. Plaintiffs agree that, as salespeople, they would solicit or generate business for the company by selling their services to customers interested in refinancing mortgages. Plaintiffs claim, however, that in addition to receiving instruction and orientation, they were also required to answer phones, set up files, assemble office furniture, and perform work related to defendant Mohn's rental property.

Plaintiff Cooper claims that for the period of June 2, 2002, through September 30, 2002, he worked approximately 634 hours of regular time, and 82.5 hours of overtime, but received no compensation. (Complaint: ¶¶ 15-16). He resigned employment with defendants on August 15, 2003, and claims that he is due commissions of not less than $5,600. (Id: ¶¶ 17-18).

Plaintiff Belton claims that during the period of June 2, 2002, through August 1, 2002, he worked approximately 354 hours of regular time, and 28 hours of overtime. (Id: ¶¶ 19-20). He also resigned his employment on August 15, 2003, and claims that he is due commissions not less than $3,00.00[1]. (Id: ¶¶ 22-23). Belton further states that on August 2, 2003, defendants issued a check no. 6113 in the net amount of $2,650.04 for the period of June 16, 2003, through July 15, 2003, but then stopped payment on the check after August 18, 2003. (Id: ¶¶ 24-25).

---

[1]Presumably this is a typographical error, and Belton estimates his unpaid compensation to be not less than $3,000.

## Standard of Review for Summary Judgment

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Nelson v. Ellerbe Beckert Const. Services, 283 F.Supp.2d 1068 (D.Minn. 2003); citing, Fed.R.Civ.P. 56©; see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Nelson, at 1076. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific showing that there is a genuine issue for trial. Id.; citing, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The Court must view the evidence, and the inferences that may reasonably be drawn from the evidence, in the light most favorable to the nonmoving party. Nelson, 283 F.Supp.2d at 1076. However, "summary judgment procedure is properly regarded not a s a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designated to secure the just, speedy, and inexpensive determination of every action." Nelson, at 1076-77.

## Analysis

### Fair Labor Standards Act

The FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. Casas v. Conseco Finance

3

Corp., 2002 WL 507059, at *2 (D.Minn. 2002); citing, 29 U.S.C. 207(a)[2]. Defendants argue that plaintiffs are exempt from collecting overtime wages under FLSA 29 U.S.C. §§ 206(a) and 207(a), because they qualify as exempt employees under the "outside salesmen" exception under 29 U.S.C. 213(a)(1).

Given the remedial nature of the FLSA, exemptions under the Act are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Casas, at * 3; quoting, Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960). Consistent with this principle, it is the employer's burden to establish that it is entitled to the benefit of an exemption and excused from the general overtime payment provision. Id., citing, Mitchell v. Kentucky Finance Co., 359 U.S. 290, 291 (1959).

Exempt from the minimum wage and maximum hour requirements is any employee employed in the capacity of outside salesman, as defined by the regulations of the Secretary. 29 U.S.C. 213(a)(1). The regulations define an outside salesperson as a person (1) "who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business" in making sales; and (2) who does not devote more than 20% of time to activities other than outside sales. Casas, at 10; citing, 29 C.F.R. § 541.500. Work performed that is incidental to and in conjunction with the employee's own outside sales or solicitation is also

---

[2]29 U.S.C. § 207(a) provides, in pertinent part:
Except as otherwise provided in this section, no employer shall employ any of his employees, who in any workweek is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. Casas, * 2 n.3.

4

considered exempt work. Id.; 29 C.F.R. § 541.500(b); 541.503. Inside sales, however, is nonexempt work. Id. 292 C.F.R. § 502(A); 29 U.S.C. § 506.

Defendants correctly argue that there is a dearth of precedents in this circuit pertaining to application of the outside salesman exemption, and rely on sister jurisdictions for guidance. According to defendants, factors to be considered include whether new business was solicited by the employee; whether sales training was provided; whether the employee was hired and designated as a salesperson; the freedom in determining work hours; and the type of compensation paid. Fields v. AOL Time Warner, Inc., 261 F.Supp.2d 971, 974 (W.D.Tenn. 2003); Nunneley v. Farmers Insurance Exchange, 564 P.2d 231, 234 (Okla. 1977); Hodgson v. Krispy Kreme Doughnut Co., 346 F.Supp. 1102, 1104-07 (M.D. N.C. 1972).

Plaintiffs agree that they were initially trained as loan originators in order to learn the mortgage business and increase their individual sales efforts, but state that they also performed other tasks during this period including assembling office furniture, and receiving calls pertaining to Mohn's rental property. Plaintiffs also agree that as loan originators they were "salespeople" soliciting and generating business for defendants by selling services involved in the refinancing of mortgages. Also undisputed, is the fact that plaintiffs were required to create their own sales reports and file the necessary paperwork after closing mortgage deals. Further, plaintiffs do not dispute that they signed a Loan Officer Pay Plan which confirmed that their earnings were derived in whole from sales commissions, and that less than 20% of their time was spent on work not related to their sales efforts[3].

---

[3]These are additional factors that are probative of an employee's status as an outside salesman. Fields v. AOL Time Warner, Inc., 261 F.Supp.2d at 974 (a court may consider whether the employee must solicit new business; receives sales training; and was hired and

5

However, plaintiffs argue that, only occasionally, did their work involve sales calls outside the office on potential referral sources such as banks or real estate agencies[4]. Moreover, plaintiffs state that they rarely spent more than 3 to 4 hours per week on outside sales calls. Contrary to defendants' contentions, plaintiffs argue that they were directed by Mohn to be in the office during regular business hours where they made sales calls from a designated work area.

Defendants, by way of Mohn's affidavit, attempt to counter this argument by stating that while plaintiffs may have chosen to spend the majority of their time in the office, rather than traveling door-to-door, this was not the typical practice of other "loan originator" employees at Premium Mortgage.

Defendants' cited cases fail to clinch their argument. They must establish every aspect of the definition for an exempt employee, and the requirement that the work be performed *away* from the business is the cornerstone of an outside salesperson. Fields v. AOL Time Warner, 261 F.Supp.2d at 974. "[H]ow an employee spends his time is a question of fact, while the question of whether his activities fall within an exemption is a question of law." Id.

A fair number of recent unpublished cases involve the "outside salesman" category. I will rely on what may the most recent pertinent case. McLaughlin v. Murphy, 2005 WL 1787883 (D. Md.). Summary judgment was there granted to plaintiff on the classification issue, noting that under the regulations "sales made via mail, telephone, or the internet are not outside sales" and even "if a salesperson uses his/her home to conduct business, it is considered the employer's place of

---

denominated as a salesman).

[4]According to plaintiffs, the banks and real estate agencies were not actual customers, but merely a resource that referred customers to Premium Mortgage.

6

business." Clearly, therefore, time in the employer's office cannot be treated as "outside" sales work, on a theory, as claimed here, that it is merely "incidental" to solicitation and closing of sales outside the office.

Thus, summary judgment will be denied to defendants, and if the case goes to trial, or plaintiffs seek summary judgment on classification, they will have a good chance of getting a ruling or instruction favorable to them.

The plaintiff in McLaughlin ultimately lost, however, in his claim for excessive hours and lost compensation, because the district judge rejected what he considered to be "'guess, speculation, and averages made up from the uncertain recollection'" of the parties. That is not a matter presented to the court at this time, but the parties may find it useful to examine that point.

Admissions

Defendants also argue that on January 14, 2005[5], they delivered to plaintiffs their First Request for Admissions. In this request, plaintiffs were asked to admit or deny that: (1) defendant is not a covered employer under FLSA; (2) defendant is exempt as an employer under FLSA; (3) plaintiffs' employment was exempt from the overtime requirements of FLSA; and (4) plaintiffs were outside salesmen within the meaning of FLSA. Defendants contend that since plaintiffs failed to answer these questions within thirty (30) days pursuant to Fed.R.Civ.P. 36, they are deemed admitted. Plaintiffs admit that they responded to outstanding discovery late, i.e. on March 11, 2005, but claim that they did not receive discovery requests for admissions.

---

[5]Defendants state, and the court's record indicates that on March 24, 2005 (docs. 26 and 27), defendants filed a certificate of service certifying that on January 14, 2005, *inter alia*, a First Request for Admissions was served on plaintiffs.

7

While defendants correctly point to Rule 36 in support of their argument, such an approach is not always appropriate. American Petro, Inc. v. Shurtleff, 159 F.R.D. 35 (D.Minn. 1994). For, as a general proposition, "[i]t does not further the interests of justice to automatically determine all the issues in a lawsuit and enter summary judgment against a party because a deadline is missed." American Petro, at 37; see also, Manatt v. Union Pacific R. Co., 122 F.3d 514, 517 (8th Cir. 1997) (because under the circumstances of this case, the prospect of deeming the controverted fact as having been admitted seems to be anathema to the ascertainment of the truth).

Here, defendants claim that plaintiffs failure to respond to certain discovery requests placed a burden upon them in maintaining their defense, and they were unable to file discovery and dispositive motions by the deadline. Defendants do not allege prejudice, and in and of itself, plaintiffs' untimeliness fails to establish any significant prejudice. Manatt, at 517 (where the party seeking admission has not established prejudice, which in this context means "the difficulty a party may face in proving its case because of the sudden need to obtain evidence.") As such, defendants fails to demonstrate entitlement to summary judgment on this ground as well.

Unpaid Wages

Defendants also argue that because plaintiffs are not covered "employees" pursuant to R.S.Mo. § 290.527, they are prevented from collecting overtime wages. This rule permits an employee to bring legal action necessary to collecting wages which the employer failed to pay. However, defendants argue that, pursuant to the definition of employee under R.S.Mo. § 290.500(l), plaintiffs are individuals whose earnings were derived in whole or in part from sales commissions; thus, they fail to come within the purview of § 290.527.

8

Plaintiffs counter that they do not seek to collect unpaid commissions for the period of June 2, 2003, through September 30, 2003, because they performed non-sales duties for which they did not receive compensation. Rather, plaintiffs contend that although Count III of their complaint seeks recovery of commissions, it is for the period after September 30, 2003.

Neither party presents a very persuasive argument. For, although defendants correctly note that a fair reading of Count III of the complaint permits an understanding that plaintiffs seek recovery of unpaid commissions for the entire period of employment, defendants fail to acknowledge that two criteria are necessary to a determination of whether an employee is covered under § 290.500. Not only must the individual have received earnings which derived from sales commissions, he or she must have also worked hours in places of employment not substantially controlled by the employer. As previously noted, there is a genuine issue of material fact as to whether defendants substantially controlled plaintiffs hours of work, as well as their place of work.

Sanctions

Nonetheless, a review of these proceedings, and the conduct of plaintiffs' counsel throughout strongly favors the imposition of sanctions. Shortly after the commencement of this action the parties were directed to file a proposed scheduling order. This was not accomplished in a timely fashion, and counsel states that this was due to the relocation of his office and inoperable phone service. On February 15, 2005, defendants filed motions to compel discovery and for sanctions due to counsel's failure to respond to certain discovery requests; counsel did not see fit to respond to the motions or offer an explanation. Thus, on March 4, 2005, counsel was directed to show cause why

9

the action should not be dismissed for failure to prosecute. In response, counsel simply stated that he "has now completed responses to defendants' discovery."

On March 16, 2005, defendants renewed their motion for sanctions, and stated that, notwithstanding counsel's claim of participating in discovery, he continued to ignore their discovery requests. Counsel claimed communication errors. By an order dated June 2, 2005, counsel was admonished that further communication errors would result in the imposition of sanctions or dismissal of the action. Due to the failure to complete discovery, the case was removed from the fall docket, and continued to the spring docket.

On October 3, 2005, defendants filed a third motion for sanctions due to counsel's failure to respond to their second requests for certain discovery. Once again, counsel did not bother to respond. However, inasmuch as defendants were able to file their dispositive motion, the motion for sanctions was rendered moot[6]. Counsel has also not seen fit to comply with the court's order to file exhibit and witness lists in preparation for trial, and has failed to participate in the preparation of the joint proposed pre-trial order[7].

It is clear that counsel has been given every opportunity to cooperate and participate in the discovery process, but has chosen to forego the opportunity. Admonitions, as well as warnings of dismissal have gone unheeded. Therefore, sanctions will be imposed. A restricted amount will be used because this is a somewhat "small claims" case.

---

[6] In prior motions, defendants argued that counsel's failure to respond to discovery requests prevented them from filing dispositive motions.

[7] The latter was to be filed on or before January 25, 2006. In their fourth motion for sanctions, defendants state that their calls to counsel have failed to compel a response. Yet, nearly one month after the deadline, counsel called chambers to state that, once again, due to hectic schedules and misunderstandings, the parties have been unable to file the pre-trial order.

Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment (ECF doc. 31) is DENIED. It is further

ORDERED that defendants' fourth motion for sanctions (ECF doc. 45) is GRANTED. Sanctions in the amount of $300 will be imposed. Responsibility between plaintiff and counsel is a matter left to them.[8]

        /s/ Howard F. Sachs
        HOWARD F. SACHS
        UNITED STATES DISTRICT JUDGE

March 6, 2006

Kansas City, Missouri

---

[8] Defendants are free to seek additional sanctions at the conclusion of litigation, depending on future compliance with rules and procedural orders.